UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

MARCUS BRENT FIFER,             )
                                )
            Plaintiff,          )
                                )
      v.                        )    13-3422
                                )
SANGAMON COUNTY,                )
SHERIFF'S OFFICE, *et al.*      )
                                )
            Defendants.         )

### SUMMARY JUDGMENT OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding pro se and presently incarcerated at Sangamon County Jail, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging constitutional violations for excessive force and deliberate indifference to a serious medical care. The matter comes before the Court for ruling on the motion for summary judgment filed by Defendants Abraham, Hammitt, and Williams. (Doc. 33). The motion is granted.

### FACTS

Plaintiff was diagnosed with degenerative disc disease and chronic sciatica arising from a vehicle collision in 2008 and a fall in

2012.  Prior to Plaintiff's incarceration, the back pain arising from these injuries was treated with anti-inflammatory medication (corticosteroids) and various forms of pain killers, including over-the-counter drugs and prescription narcotics.  According to Plaintiff, back surgery was recommended.

On or about November 18, 2013, Plaintiff was arrested and jailed in the Sangamon County Jail.  Between November 21, 2013 and December 7, 2013, Plaintiff was examined by medical staff at the jail for complaints of back pain and other ailments on at least three (3) occasions:  November 21; November 23; and, November 26.  At each of these visits, Plaintiff complained of back pain and was prescribed either Motrin or Tylenol, common over-the-counter medications, for the pain.  (Docs. 33-7 at 10, 13, 15).

In the morning of December 7, 2013, Plaintiff submitted several medical requests complaining of back pain and psychological issues related to the back pain.  The requests were forwarded to the medical department.  At approximately 11:45 a.m., Defendant Hammitt, a nurse at the jail, was called to Plaintiff's cell block after Plaintiff had pounded on the control room window and then collapsed to the floor.  Upon arrival, she observed Plaintiff

lying on the floor complaining of severe back pain, though Plaintiff's vital signs and movements were not consistent with those usually observed when someone is suffering from extreme pain.  Based on this, Defendant Hammitt opined that Plaintiff was malingering and not experiencing the pain of which he complained.  In addition, Defendant Hammitt observed that Plaintiff's range of motion and reflexes were within normal limits.  Nonetheless, Plaintiff was taken to the high risk area of the jail for observation by mental health staff given his self-disclosed history of psychological issues and then-current complaints of psychological distress.  No pain medication was ordered.

     Plaintiff was subsequently examined by Defendant Abraham, a physician at the jail, on December 9, 2013.  After the examination, Defendant Abraham did not believe that pain medication was necessary at that time based upon his examination and the notes from December 7, 2013.  Therefore, no pain medication was ordered, but Plaintiff's pre-incarceration medical files were ordered for purposes of Defendant Abraham's review.  Defendant Abraham did not interact with Plaintiff again until after the initiation of this lawsuit on December 27, 2013.

Plaintiff's complaints of back pain continued. On December 17, 2013, Defendant Williams, a physician's assistant, examined Plaintiff. Despite Plaintiff's complaints of pain, Plaintiff's vital signs remained within normal limits, and all physical signs Defendant Williams observed were indicative of a person who was malingering. Thus, Defendant Williams ordered that Plaintiff continue to be observed, but did not order any pain medication. Defendant Williams did not examine Plaintiff again until after Plaintiff filed this lawsuit.

## ANALYSIS

Plaintiff filed his Complaint on December 27, 2013, alleging that jail medical staff provided inadequate medical care during the month of December 2013. Plaintiff has not sought leave to amend his Complaint, and, therefore, the Court will consider only those records relevant to the time period in Plaintiff's Complaint for purposes of this ruling. Furthermore, there is no dispositive motion pending before the Court as it relates to Plaintiff's allegations of excessive force. Except as provided below, the Court will not address those allegations.

As a pretrial detainee, Plaintiff's claim arises under the Fourteenth Amendment, rather than the Eighth Amendment's proscription against cruel and unusual punishment. Mayoral v. Sheahan, 245 F.2d 934, 938 (7th Cir. 2001). Despite this distinction, there exists "little practical difference between the two standards." Id. (quoting Weiss v. Cooley, 230 F.3d 1027, 1032 (7th Cir. 2000)). To succeed on a constitutional claim for inadequate medical care, the Plaintiff must show that the prison official acted with deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 105 (1976). Deliberate indifference is more than negligence but does not require the plaintiff to show that the defendants intended to cause harm. Mayoral, 245 F.3d at 938. Liability attaches when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Defendants argue that Plaintiff did not suffer from a serious medical need because pain associated with Plaintiff's condition did not reach a level that could be considered serious and typically only

occurs intermittently in patients with a similar condition. "An objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." King v. Kramer, 680 F.3d 1013, 1018 (7th Cir. 2012) (internal quotations omitted). In determining the seriousness of a medical condition, the court evaluates several factors: (1) whether failure to treat the condition would result in further significant injury or the unnecessary and wanton infliction of pain; (2) whether a reasonable doctor or patient would find the alleged injury worthy of comment or treatment; (3) the existence of a medical condition that significantly affects daily activities; and, (4) the existence of any chronic and substantial pain. Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997).

    The parties do not dispute that Plaintiff suffers from degenerative disc disease. Although the disease is often asymptomatic, Plaintiff was receiving consistent medical treatment for this condition prior to his present incarceration, and Plaintiff indicates that surgery was recommended by at least one treating physician. Plaintiff testified in his deposition that Defendant

Abraham recognized at least the possibility of surgical treatment in his initial interaction with the Plaintiff. Pl. Dep. 104:15-17. Also, Plaintiff consistently asserted that the pain he experienced was constant, not intermittent. If all reasonable inferences are drawn in a light most favorable to Plaintiff, a reasonable juror could conclude that Plaintiff suffered from a serious medical need.

With regard to medical professionals at the jail, the treatment of that condition is a matter of professional discretion with which the courts will not interfere unless the evidence suggests that "'no minimally competent professional would have so responded under those circumstances.'" Sain v. Wood, 512 F.3d 886, 894-95 (7th Cir. 2008) (quoting Collignon v. Milwaukee Cnty., 163 F.3d 982, 988 (7th Cir. 1998)). In other words, a medical professional is deliberately indifferent only if "the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." Id. (quoting same). Within these bounds, a prison medical professional "is free to make his own, independent medical determination as to the necessity of certain treatments or

medications," and deference to a prior doctor's diagnosis is not necessary to survive constitutional scrutiny. <u>Holloway v. Delaware Cnty. Sheriff</u>, 700 F.3d 1063, 1074 (7th Cir. 2012). Generally speaking, nurses must "defer to treating physicians' instructions and orders in most situations . . . [unless] it is apparent that the physician's order will likely harm the patient." <u>Berry v. Peterman</u>, 604 F.3d 435, 443 (7th Cir. 2010).

There is no evidence in the record to suggest that the Defendants were deliberately indifferent to Plaintiff's medical condition, even when considering the fact that Plaintiff did not receive pain medication during the month of December 2013. At the time that Defendant Hammitt examined Plaintiff, Plaintiff's prescription for pain medication had been expired for approximately six (6) days. (Doc. 33-8 at 4-6) (Plaintiff's medication records for December 2013). During that time, there is no evidence to suggest that Plaintiff had complained of pain, or otherwise requested medical assistance or pain medication. <u>Id.</u> at 32-39 (Plaintiff's Inmate Request forms for December 2013). When considered in light of Defendant Hammitt's observations that Plaintiff's vital signs and range of motion were within normal limits and her assessment

that Plaintiff's movements were not consistent with an individual suffering extreme pain, a reasonable juror could not conclude that Defendant Hammitt's actions to take Plaintiff to a high-risk, frequently monitored area of the jail and then submit requests for Plaintiff to be examined by a doctor was deliberately indifferent.  In addition, Defendant Hammitt, as a nurse, was not authorized to prescribe pain medication.  While she could have dispensed it if a doctor, physician's assistant, or advanced nurse practitioner had ordered it, there were no such orders in effect.

    Plaintiff was examined on two other occasions during December 2013: by Defendant Abraham on December 9, 2013; and, by Defendant Williams on December 17, 2013.  During each examination, Plaintiff's vital signs were within normal limits and atypical of an individual experiencing significant pain.  Following his examination, Defendant Abraham ordered Plaintiff's medical records for historical purposes and that Plaintiff remain in the high risk area for observation.  During Defendant Williams' examination, Plaintiff displayed physical signs indicative of an individual who was malingering.  Neither Defendant prescribed pain medication.

The treatment of any injury often includes several variables, including pain management, which the Court must view in the totality of the circumstances. Cf. Snipes v. DeTella, 95 F.3d 586, 591 (7th Cir. 1996) (removal of ingrown toenail involves several minor medical decisions which must be viewed as a whole). These decisions are a "classic example of matters for medical judgment." Id. (quoting Estelle, 429 U.S. at 107). While a significant delay in administering effective medical treatment could support a finding of deliberate indifference, see Berry, 604 F.3d at 435, the delay must be measured in light of the "seriousness of the condition and the ease of providing treatment." McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010). At the time the Defendants examined the Plaintiff, they were still in the process of determining the seriousness of Plaintiff's condition and whether the pain that Plaintiff alleged was caused by a physical or psychological malady. Without Plaintiff's historical medical records, the Defendants' assessments were limited in scope to Plaintiff's complaints of pain and the physical observations that conflicted therewith. On this basis, the Court finds that no reasonable juror could conclude that the conservative course of treatment chosen fell outside the bounds

of accepted professional judgment, practice, or standards, especially when there is no evidence in the record that the Defendants did not actually base their decisions on such.  While Plaintiff may have disagreed with this treatment, a mere disagreement with the course of treatment, standing alone, is not sufficient to attach constitutional liability.  Snipes, 95 F.3d at 592.

Therefore, the Court finds that no genuine issue of material fact exists as to the claims of deliberate indifference to a serious medical need against Defendants Hammitt, Abraham, and Williams, and the Defendants are entitled to judgment as a matter of law.

**IT IS THEREFORE ORDERED:**

1) **Defendants' Motion for Summary Judgment is GRANTED [33].  Clerk is directed to dismiss Defendants Hammitt, Abraham, and Williams from this case with prejudice.**

2) **The Court finds that a genuine issue of material fact exists as to Defendant Guy, the sole remaining defendant, as it relates to Plaintiff's claim of excessive force.  Therefore, this case shall proceed to jury trial solely on that issue.**

3) **A final pretrial conference is scheduled for     March 21, 2016 at 3 p.m.    .  The Plaintiff shall appear by video conference and the Defendants' attorney(s) shall appear in person before the court sitting in Springfield, Illinois. The clerk is to issue a**

writ for the Plaintiff's participation in the video conference.

4) The Court will send out proposed jury instructions and intends to ask the standard voir dire questions published on the Court's website (ilcd.uscourts.gov/local rules and orders/orders and rules by Judge/Judge Myerscough/General Voir Dire Procedure).  By _____March 7, 2016_____, the parties shall file:  1) an agreed proposed pretrial order; 2) alternate or additional jury instructions (no duplicates); 3) motions in limine; and, (4) additional voir dire questions (not duplicative of the Court's).  All proposed instructions shall be clearly marked, identifying the party, the number, and whether the instruction is additional or alternate (i.e., Pl.'s 1, additional; Pl.'s 2, alternate to Court's 3).

5) The Plaintiff and Defendants shall appear in person at trial.  Inmates of the Sangamon County Jail or Illinois Department of Corrections (IDOC) who are not parties to this case shall appear by video conference and Sangamon County Jail employees who are not parties may also appear by video conference at trial.  Other nonparty witnesses may appear by video at the court's discretion.  Therefore, the proposed pretrial order must include: (1) the name, inmate number and place of incarceration for each inmate to be called as a witness; (2) the name and place of employment for each Sangamon County Jail employee to be called as a witness; and, (3) the names and addresses of any witnesses who are not inmates or employees for whom a party seeks a trial subpoena.  The party seeking the subpoena must provide the necessary witness and mileage fees pursuant to Federal Rule of Civil Procedure 45.

**6) A jury trial is scheduled for         April 12-14, 2016     at 9:00 a.m. at the U.S. Courthouse in Springfield, Illinois. No writs to issue at this time.**

ENTERED:       August 19, 2015

FOR THE COURT:

                          *s/Sue E. Myerscough*
                          SUE E. MYERSCOUGH
                          UNITED STATES DISTRICT JUDGE